THE STATE (MARSHALL O. ROBERTS and others, Prosecutors,) *vs.* MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. The right of the owner of lands bounding on a navigable river extends only to high water mark, and all below that belongs to the state. The inchoate right, which the owner of the upland has to acquire an exclusive right to the property, by wharfing out or otherwise improving the same, gives him no property in the land while it remains under water; the state may grant it to a stranger at any time before it is improved.

2. Where a person owns land above and below high water mark, and an assessment of taxes is made upon the whole for an amount not greater than the value of the land above high water mark, it will be sustained; but if a separate assessment is made on the land below high water, it cannot be supported.

3. The charter of Jersey City requires the assessors to value the property assessed at its full fair value, designating the number of lots or parcels of land which they assess to each person. Held that if several blocks and lots lying contiguous to each other, and not separated by streets are taxed as

one parcel, the charter is complied with. The designation of separate blocks and lots, some of which are above and some below high water mark, with a distinct value attached to each, is a good assessment, provided the aggregate value is not greater than the value of the property above high water.

4. The water tax of Jersey City is assessed, by virtue of a special law, upon all grounds within the city limits liable to taxation, at a certain rate for each one hundred square feet of surface: held that such assessment should only be upon land above high water mark.

*Certiorari* in matter of taxation.

The facts in the case sufficiently appear in the opinion delivered.

Argued February term, 1856, before the CHIEF JUSTICE, and OGDEN, ELMER, and HAINES, Justices, by *Scudder* and *Zabriskie*, for the plaintiffs in *certiorari*, and *Rutherford* and *Frelinghuysen*, contra.

*Scudder* and *Zabriskie* cited *Pamph. L.* 1851, *p.* 409, § 44; *Nix Dig.* 871, § 1; *3 Zab.* 624, *Bell* v. *Gough*; *Pamph. L.* 1852, *p.* 426, § 17; *4 Halst. Ch.* 714, *Associates, &c.,* v. *Jersey City*; *15 Howard* 426, *Den* v. *Jersey Company.*

*Rutherford* and *Frelinghuysen* cited *4 Zab.* 108, *State* v. *Collector of Jersey City*; *3 Zab.* 624, *Bell* v. *Gough*; *4 Halst. Ch.* 714, *Associates, &c.,* v. *Jersey City*; *Laws of* 1804; *Comyn's Dig.* "*Navigation*"; *3 Kent's Com.* 427, 431; *1 Halst.* 1, *Arnold* v. *Mundy*; *16 Peters* 367; *1 Zab.* 156, *Gough* v. *Bell*; *3 Zab.* 675, *Bell* v. *Gough*; *Pamph. L.* 1854, *p.* 191; *4 Maule & S.* 532; *4 Zab.* 117; *3 Zab.* 532, *State* v. *Bentley*; *14 Johns. R.* 255.

ELMER, J. This *certiorari* removes the assessments made against the prosecutors, by the assessors of Jersey City, for the county, city, and water taxes of the year 1855. It appears, by the assessment returned and the state of the case agreed upon, that the property is assessed as vacant lots, separate and distinct values being annexed to the

respective parcels and blocks, amounting in the aggregate
to the value of $87,500. It is a part of what was formerly
the Coles property. All of it, except a narrow strip five
feet in width, is below the ordinary high water mark of
the Hudson river. The greater number of the lots are
covered with water, even at low tide.

The prosecutors hold this property under conveyances,
which purport to convey all the right and interest of the
grantors in the land situate east of a line drawn parallel
to, and five feet west of, the curved shore of Harsimus
cove, and extending out into the river below the high
water line, and also below the low water line, so as to
cover the property assessed. The value of the five feet
strip is admitted to be $87,500, on account of the water
rights incident thereto. No part of the property below
the high water mark has been granted by the state, nor
had the prosecutors, or those under whom they claimed,
obtained any license to wharf out, or otherwise improve
the same.

It also appears that this property, including the land
under water, was laid out in blocks and streets in 1804,
upon a map made by John B. Coles, and filed in Bergen
county clerk's office ; which blocks are the same as those
upon the Jersey City assessment map, and are designated
thereon by the same numbers as those used in the assess-
ments ; but no streets have been laid out or opened by
the municipal authorities upon the parts included in the
assessment.

It must now be accepted as the established law in New
Jersey, that the right of the owner of lands bounding on
a navigable river extends only to the actual high water
mark, and that all below that mark belongs to the state.
The inchoate right, if such it may be called, which the
proprietor of the upland has, either with or without a li-
cense, to acquire an exclusive right to the property, by
wharfing out or otherwise improving the same, gives him

no property in the land while it remains under the water. It may be granted by the state to a stranger, at any time before it is actually reclaimed and annexed to the upland. Such is unquestionably the common law, and I am aware of no alteration of it in this respect in New Jersey. Some of the judges seemed to have expressed a different opinion in the case of *Bell* v. *Gough*, before the Court of Errors, but no case has been decided which establishes a different doctrine. In that matter, I concur myself with the opinion expressed by Judge Randolph. 2 *Zab.* 491. If the blocks and lots covered with water had been in this valued and assessed entirely distinct from the upland, I should have felt constrained to hold the assessment could not be supported.

But the assessment in this case against the present prosecutors may be regarded as one assessment. It appears that the lots are all contiguous, and in fact form one distinct parcel of property. The prosecutors are assessed for the whole, including the water lots, so far as the county and city taxes are concerned, no more than was justly taxable to them for the part above the high water mark, as to which their title is complete. We are brought, then, to the single question, whether the distinct statement of the several lots and blocks, and the separate valuation thereof on the duplicate, is such a lack of form as to impair the substantial rights of the prosecutors. If it is not, we are expressly forbidden by the statute to set aside the tax.

The charter requires the assessors to value the property assessed at its full fair value, designating the number of lots or parcels of land which they assess to each person. (*Acts of* 1851, *p.* 409, § 44). This, as was noticed in the case of *The State* v. *Collector of Jersey City*, 4 *Zab.* 108, was probably introduced in consequence of the well known previous laying out of the city, upon public maps, into squares, blocks, and lots. Had the property in question

been taxed as one parcel, the assessment would have complied with the charter. If it sufficiently appeared that the property actually owned by the prosecutors was included in such an assessment, I cannot perceive that an addition to it of adjoining property, in point of fact still belonging to the state, would have been of the slightest injury to them, provided it clearly appeared that their tax was not thereby increased. The designation of the blocks and lots in this case, and the distinct values attached to them, does them no injury. The agreed fact, that the aggregate value assigned to the whole is not greater than the true and proper value of a part, puts this beyond a doubt. Taken in connection with this fact, the assessment may be fairly regarded as the assessment of property above high water, the value of which was arrived at by adding to it the value of the water rights incident thereto. It is only necessary to amend the duplicate by striking out the water lots and by adding their value to the value of the other lots, and it will be correct. Such an amendment the commissioners of appeal might have ordered, had the case been before them, and I think this court ought to treat the case as if that was done. The defect is a defect of form, and not of substance. The assessment is personal, constituting a claim against the individual prosecutors, and being shown to be, so far as the county and city taxes are concerned, precisely what it ought to have been, I am of opinion it should to that extent be affirmed.

The water tax is assessed by virtue of a special act, (*Acts of* 1852, *p.* 426, § 17), which empowers the mayor and common council to instruct the assessors to assess annually, upon all grounds within their limits which are liable to taxation, a special tax, at the rate of two cents for each one hundred square feet of their surface. It would be, in my opinion, a very unreasonable construction of this section, to hold that it includes lots under water, whether owned by the state or by an individual. The very use of the word grounds, to be taxed in proportion to their surface, without regard to value,

State v. Jersey City.

indicates a distinction. This part of the tax, except so much as is for the surface of ground actually above high water, must be set aside.

The CHIEF JUSTICE, and Justices OGDEN and HAINES, concurred.

CITED in *State* v. *Sippel*, 1 *Dutch.* 530 ; *Stevens* v. *Paterson & Newark R. R. Co.*, 5 *Vr.* 546, 569 ; *State* v. *Haight*, 6 *Vr.* 184 ; *State* v. *Taylor Coll.*, 6 *Vr.* 186 ; *Haney* v. *Compton*, 7 *Vr.* 516.